## The Catawissa Railroad Company *versus* Titus *et al.*

*Construction of contract.—" Expenses of carrying out agreement," what included in.—Joinder of plaintiff.*

Where an agreement was made by the holders of chattel bonds of an insolvent railroad company by their attorney, under which a new company was organized on the basis of a division of the stock in certain proportions among those interested in the old company, and it was agreed, among other things, that " the expenses of carrying out this agreement, printing new bonds, &c., to be sustained by the new company;" in an action by certain of said bondholders against the new company to recover the amount paid by plaintiffs to the attorney above mentioned for his professional services, *Held,*

1. That the words " printing bonds, &c.," did not restrict the agreement to expenses of that character only, but covered all reasonable and necessary expenses in carrying out the arrangement; and

2. That the action was maintainable by the plaintiffs alone without joining the other parties to the written agreement, they being the only persons by whom the expenses were paid.

ERROR to the District Court of *Philadelphia.*

This was an action of debt by Benjamin W. Titus and Uriel T. Scudder, trading as Titus & Scudder, and The Trenton Loco-

motive and Machine Manufacturing Company, against the Cata-
wissa Railroad Company.

The case was this :—

In the fall of the year 1859, the Catawissa, Williamsport and
Erie Railroad Company were insolvent, and their property was
in the hands of a receiver. A bill in equity was pending in the
Supreme Court, praying a decree for the sale of the whole estate
of the company under the mortgages thereon. The parties in
interest were the holders of the first mortgage bonds of the com-
pany, $1,500,000 in amount; the holders of the second mortgage
bonds, $500,000 in amount; the holders of seven different issues
of bonds secured by mortgages on personal property of the com-
pany, known as chattel mortgages, $400,000 in amount; and the
holders of the stock, $3,000,000 in amount. These parties were
represented by committees or attorneys appointed to attend to
the interests of their constituents in the proceedings then pending.
After the usual amount of negotiation, a scheme for purchasing
in the property, and organizing a new company upon the basis
of dividing the stock in certain proportions among those
interested in the old company, was adopted. Among the holders
of chattel bonds were the plaintiffs who, with the other parties
(whose names are subscribed to the letter of attorney to O. W.
Davis, Esq.), were the holders of bonds numbered from 681 to
747 both inclusive, and secured by a mortgage upon a locomotive
engine and certain cars, executed by the company on the 26th
day of July, A. D. 1859, to Joseph Paxton, trustee.

In dealing with the committee of first mortgage bondholders,
Mr. Davis tried to get the best terms that he could for his con-
stituents, and succeeded in obtaining an agreement in which it
was stipulated " that the holders of the chattel bonds should sur-
render the same, and receive in lieu thereof the coupon bonds
of the successors of The Catawissa, Williamsport and Erie Rail-
road Company, payable in twenty years from May 1st 1860,
each coupon being for two and a half per cent. of the principal
of said bonds, payable the first days of May and November of
each and every year, the first coupon to be payable the first day
of November 1860.

" That to secure to the holders of said bonds the payment of the
principal and interest thereof, said new company should execute
and deliver to a trustee, to be selected by the parties, a mort-
gage upon the personal property mentioned in the chattel
mortgage now existing, except two cars, mentioned therein as
purchased from the Fitchburg and Worcester Railroad Company.
The provisions of which new chattel mortgage were to be similar
to those of the chattel mortgage now in force, with these excep-
tions; default in the payment of the coupons was to entitle the
trustee to immediate possession of the chattels, to be again

[Catawissa Railroad Co. v. Titus et al.]

delivered to the company if, within sixty days, such interest is paid, and if for the space of sixty days such interest is due and unpaid, the principal of the bonds shall become due and mature.

In lieu of the coupons due November 1st 1859, and May 1st 1860, attached to sixty-three of said bonds, amounting to $31,500, and in consideration of a reduction in interest from ten to five per cent. per annum, the holders of the said sixty-three bonds were to receive $10,000 of the preferred stock of the new company, to be issued as soon as it is organized.

The Trenton Locomotive and Machine Manufacturing Company were to receive fifteen shares of preferred stock, in payment of a bill due them by the Catawissa, Williamsport and Erie Railroad Company, and the expenses of carrying out this agreement, printing new bonds, &c., were to be sustained by the new company.

This arrangement was carried out, and the securities of the Catawissa Railroad therein mentioned were delivered to Mr. Davis in lieu of those of the Catawissa, Williamsport and Erie Railroad Company held by his constituents.

Some time afterwards this suit was brought, in which the plaintiffs, who are some of the parties with whom the agreement of March 1st 1860 was made by the committee of first mortgage bondholders of the Catawissa, Williamsport and Erie Railroad Company, sought to recover from the Catawissa Railroad Company the amount paid by them to Mr. Davis for his professional services rendered in attending to the matter which had been intrusted to his care by the above-mentioned letter of attorney. These services, according to Mr. Davis's testimony, consisted of his negotiations with the committee of first mortgage bondholders, and the representatives of other interests in the Catawissa, Williamsport and Erie Railroad Company, obtaining the agreement of March 1st 1860, writing to members of the legislature to secure the passage of the Act of March 21st 1860, drafting the mortgage and revising a draft of the bonds to be given by the Catawissa Railroad Company, and attending to the exchange of these securities for those held by his constituents. It was admitted by Mr. Davis that these services were rendered by him at his own instance and as counsel for his own clients exclusively. It was shown also by other testimony that Mr. Davis was not in any way employed by the committee of first mortgage bondholders to assist in organizing the new company.

The sixth clause of the agreement of March 1st 1860, viz. :— "The expenses of carrying out this agreement, printing new bonds, &c., are to be sustained by the new company," was relied upon by the plaintiffs.

The judge in the court below charged the jury as follows :— "I do not regard these words 'printing bonds, &c.,' in the

[Catawissa Railroad Co. *v.* Titus *et al.*]

agreement as restricting the agreement to expenses of that character only, but consider the agreement covers all reasonable and necessary expenses in carrying out the arrangement. But in allowing for the services of Mr. Davis, if you allow anything, you must not consider the services rendered before the date of the agreement." The learned judge reserved for the opinion of the court in banc the point "whether the action is maintainable by the plaintiffs alone without joining the other parties to the written agreement with the committee of first mortgage bondholders;" on which point judgment was afterwards entered for the plaintiffs, which were the chief errors assigned here for the defendants.

*Jas. E. Gowen*, for plaintiffs in error, argued, 1. That as the agreement was with all of Mr. Davis's clients jointly, all of them should have joined in the suit: citing Severgast *v.* Berk, 8 S. & R. 308; Mehaffy *v.* Lyttle, 1 Watts 314; United States *v.* Keenan, 1 P. C. C. R. 169; Archer *v.* Dunn, 2 W. & S. 327; 1 Chitty Pl. p. 8*; 1 Parson on Contracts, p. 13, 14, and cases there cited.

2. The court improperly submitted to the jury the question whether the "expenses" incurred by the employment of Mr. Davis fell within the terms of the written agreement. Written contracts must be construed by the court: Dennison *v.* Wertz, 7 S. & R. 376; Neilson *v.* Harford, 8 M. & W. 823; 2 Parsons on Contracts 4; Rapp *v.* Rapp, 6 Barr 45.

3. Even if it was not the province of the court to construe this contract, there was no evidence to warrant the submission of plaintiffs' claim to the jury.

4. The submission of plaintiffs' claim was accompanied with instructions which obviously tended to mislead them in saying "in allowing for the services of Mr. Davis, if you allow anything, you must not consider the services rendered before the date of the agreement."

5. The court erred in deciding that the words " printing, &c.," did not restrict the agreement to expenses of that character. These words are explanatory of the word " expenses," and were intended to restrict its meaning: Case *v.* Cushman, 3 W. & S. 546.

*David W. Sellers*, for defendants in error.—The plaintiffs were the owners of all the bonds mentioned in the documentary evidence. The parties who also signed the power of attorney were the holders of some of the loans as collaterals, and it was a mere matter of precaution on the part of O. W. Davis to have them sign; but the action is not on the power of attorney, it is on the clause of an agreement to pay

[Catawissa Railroad Co. *v.* Titus *et al.*]

expenses, and which from its nature must mean the expenses of each party. The *narr.* was for the expenses *plaintiffs* have sustained, and the proof followed the allegation. The agreement was evidence because it sustained

1. The averment in the *narr.*; and

2. Because it was a part of an entire transaction which was ratified by the defendants.

The argument in the court below, as here, was that the clause for the payment of expenses meant printing bonds, the ink and paper. It is submitted that, as matter of law, this construction cannot be given. What were the reasonable and necessary expenses, was a question for the jury, and they have found conformably to the view of the plaintiffs. Is it not absurd to suppose that in a transaction involving the adjustment of such large claims, and in which all parties agreed to make a new company, which should bear the expenses, that the trifling cost of ink, paper, and printing the bonds should be made the subject of a special agreement? Without such a clause, the new company, in giving new bonds for old ones, would have had to defray *these* expenses.

The word expenses must be construed by the subject-matter. In one case it may mean one thing and quite the contrary in another : Brown *v.* McFarland, 5 Wright 129.

If the agreement to pay the expenses was one which justified the court in leaving it to the jury at all, the other assignments are without force.

The opinion of the court was delivered by

READ, J.—By the agreement, the expenses of carrying it out, printing new bonds, &c., were to be sustained by the new company, and the court was right in saying that these words, " printing bonds, &c.," did not restrict the agreement to expenses of that character only, but considered it covered all reasonable and necessary expenses in carrying out the arrangement. There was therefore no error in the charge to the jury.

Upon the reserved point the court were also right—because the plaintiffs were the only persons entitled to the compensation, as the expenses were exclusively borne by them, and if the joining of the other parties to the agreement were necessary in a mere technical point of view as nominal plaintiffs, the record could be amended here by adding their names. There is nothing in the other assignments of error.

Judgment affirmed.